UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CIVIL ACTION** |
| **VERSUS** | **NO: 16-36** |
| **LEONARD MORRISON** | **SECTION: "S"** |

### ORDER AND REASONS

**IT IS HEREBY ORDERED** that the renewed **Motion to Suppress** filed by defendant, Leonard Morrison, is **DENIED**.

This matter is on remand from the Fifth Circuit Court of Appeal, mandating the court to make an explicit credibility determination with respect to conflicting testimony given at the evidentiary hearing on defendant, Leonard Morrison's, motion to suppress.

The Court of Appeal opined:

> At the suppression hearing, the district court heard testimony setting out two very different versions of events regarding the search of Morrison's home. Both versions agreed, however, that no one objected when law-enforcement officers entered Morrison's home. The district court erroneously believed that this was enough to render the entry—and the subsequent search—consensual, so it did not decide which version of events to credit. Because a credibility determination was necessary, we vacate the district court's decision to deny Morrison's motion to suppress and remand for further proceedings. In all other respects, we affirm.

<u>United States v. Staggers</u>, 961 F.3d 745, 750 (5th Cir. 2020).

Two separate instances of consent occurred in this case: first, Morrison's partner, Shlonda Jupiter, impliedly consented to the officers' entry into Morrison's living room; second, Morrison himself explicitly consented to a search of the premises. The conflicting testimony pointed to by

the Court of Appeal relates to whether Shlonda Jupiter consented to allow law enforcement officers to enter Morrison's home during the course of a "knock and talk" investigative procedure.

> As summarized by the Court of Appeal, this court
>
> concluded that Morrison's girlfriend, Shlonda Jupiter, gave implied consent for two law-enforcement officers, Rohn Bordelon and David Biondolillo, to enter her residence. The district court acknowledged that "[t]he officers testified that Jupiter initially opened the door about half way and then opened it wider and stepped aside for them to enter" while Jupiter "testified that she opened the door a little and stood between the door and the frame, but that she did not open it wider and step aside to allow the officers in." The district court did not decide to credit one version of events over the other; instead, it reasoned that Jupiter gave implied consent because "testimony of all parties indicates that there was no forced entry nor antagonistic response" and "Jupiter did not testify that the officers physically moved her out of the way."

Id. at 752. Thus, the court has been charged with making a specific finding as to "whether Jupiter's testimony or the testimony of Bordelon and Biondolillo was more credible." Id.

Consent to a search does not need to be explicit, but it can be inferred from silence or failure to object to a search only if that silence follows a request for consent. Id. at 757 (citing United States v. Jaras, 86 F.3d 383, 390 (5th Cir. 1996)). Further, " '[c]onsent to a search can be implied from silence or failure to object if it follows a police officer's explicit or implicit request for consent.' " Id. (quoting United States v. Martinez, 410 F. App'x 759, 763 (5th Cir. 2011). "Consent may also be inferred from actions that reasonably communicate consent." Id. (citing United States v. Lewis, 476 F.3d 369, 381 (5th Cir. 2007) ("The officers reasonably interpreted Caldwell's gesture as an invitation to enter the room.")). Gestures to enter a room may constitute consent, even where no verbal consent was requested or

given. Lewis, 476 F.3d at 381 (citing United States v. Cotnam, 88 F.3d 487, 490 (7th Cir. 1996)).

In this case, the court credits the testimony of the officers that Jupiter impliedly consented to their entry into the living room of the defendant's home by stepping back and opening the door to allow them in after they asked to speak to Morrison. This is because the totality of the surrounding circumstances, including subsequent events, are consistent with the conclusion that Jupiter allowed them to enter the living room. These circumstances include the fact that it is undisputed that Jupiter opened the door, and as acknowledged by the Court of Appeal, no one objected to the officers' presence in the defendant's living room once they entered. The fact that the officers waited in the living room instead of immediately heading into the bedroom, and that they did not execute a search until Morrison voluntarily and explicitly consented to a search, also suggest a consensual entry into the home. The cordial tenor of the entire proceedings further indicate that the entry into the living room was consensual. Finally, the court finds that transcripts of phone calls from the jail on the date of Morrison's arrest, in which Jupiter expressed remorse to Morrison for opening the door to the officers, also support the view that she allowed them in.

For all of these reasons, the court credits the law enforcement testimony that Jupiter consented to the officers' entry into the living room by stepping back from the door and allowing them to enter. Then, once in the home, the officers Mirandized the defendant, and obtained explicit consent from Morrison, both orally and in writing, to search the home.

Accordingly, defendant's renewed **Motion to Suppress**, incorporated in the post-appeal

memorandum in support (Rec. Doc. 590) is **DENIED**.

New Orleans, Louisiana, this  12th  day of August, 2020.

_____
**MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE**