UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES** | **CRIMINAL ACTION** |
| **VERSUS** | **NO: 16-36** |
| **LEONARD MORRISON** | **SECTION: "S" (1)** |

ORDER & REASONS

**IT IS HEREBY ORDERED** that defendant's **Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence** (Rec. Docs. 722, 734) is **DENIED**.

BACKGROUND

This matter is before the court on Leonard Morrison's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. Having reviewed the entire record, the court finds that this matter can be resolved without an evidentiary hearing.

Defendant Leonard Morrison was charged in Count 1 of the third superseding indictment with conspiring with his co-defendants to distribute and possess with the intent to distribute cocaine hydrochloride, heroin, and marijuana. Counts 2 and 7 charged Morrison with using a communications facility in connection with the conspiracy. Morrison was charged with possession with the intent to distribute cocaine hydrochloride and marijuana in Counts 27 and 28, respectively. Count 29 charged that Morrison possessed a firearm in furtherance of drug-trafficking crimes, and Count 30 charged that Morrison was a previously convicted felon in possession of a firearm.

Following a trial by jury, Morrison was acquitted of all charges except being a felon in possession of a firearm. Due to his designation as a career offender under the Armed Career

Criminal Act, 18 U.S.C. § 924(e) ("ACCA")[1] and his criminal history category of VI, Morrison's guidelines range was 235 to 293 months, with a 15-year statutory mandatory minimum. The court granted Morrison's request for a downward variance, and sentenced him to the mandatory minimum of 15 years. In granting the downward variance, the court explicitly referenced the fact that Morrison consented to a warrantless search, that he waived his Miranda rights, and that he voluntarily led the police to the gun in his bedroom closet and admitted to placing it there.

Morrison appealed his conviction and the suppression ruling. The United States Court of Appeals for the Fifth Circuit remanded the matter to this court for a specific credibility determination related to one of the court's findings on Morrison's motion to suppress. Following the court's making the necessary finding, the Fifth Circuit affirmed the conviction and sentence in all respects. In December 2021, the United States Supreme Court denied certiorari. Less than one year later, Morrison filed the instant motion under 28 U.S.C. § 2255 arguing that his conviction is invalid because he received ineffective assistance of counsel, and a supplement to the motion arguing that "new established case law"[2] justified habeas relief. The motion is therefore timely. The government opposes the motion.

---

[1] The predicate convictions for the enhancement were a January 2002 conviction for possession with intent to distribute marijuana and distribution of marijuana, an October 2002 conviction for possession with intent to distribute cocaine, and an October 2006 conviction for attempted possession with the intent to distribute MDMA (ecstasy).

[2] Morrison's Petition for Leave to Supplement, Rec. Doc. 734, 1.

## DISCUSSION

*Legal Standard*

Pursuant to section 2255, a prisoner in custody under a federal court sentence may seek relief on four bases: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose such sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255. If the district court determines that a petitioner is entitled to relief under section 2255, the court "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b). Relief under section 2255 "'is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice.'" United States v. Segler, 37 F.3d 1131, 1133 (5th Cir. 1994) (quoting United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992) (per curiam)).

In considering a section 2255 petition, the court, after reviewing the full record, must determine whether an evidentiary hearing is necessary. Rules Governing Section 2255 Proceedings, Rule 8. Courts are required to hold an evidentiary hearing unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). An evidentiary hearing is not required if the petitioner fails to produce any "independent indicia of the likely merit of [his] allegations." United States v. Edwards, 442 F.3d 258, 264 (5th Cir. 2006) (quoting United States v. Cervantes, 132 F.3d 1106, 1110 (5th Cir.

3

1998)). The petitioner bears the burden of establishing his claims by a preponderance of the evidence. Wright v. United States, 624 F.2d 557, 558 (5th Cir. 1980).

*Ineffective Assistance of Counsel*

Morrison contends that his constitutional rights were denied due to ineffective assistance of counsel. To succeed on a claim of ineffective assistance of counsel, a petitioner must show: (1) that his counsel's performance was deficient; and (2) that his counsel's deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). A claim of ineffective assistance of counsel is defeated if the petitioner fails to establish either deficient performance or resulting prejudice. United States v. Chavez, 193 F.3d 375, 378 (5th Cir. 2000).

Deficient performance by counsel is established by showing "that counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 687-88. In applying this standard, the "court must indulge a 'strong presumption' that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." Bell v. Cone, 535 U.S. 685, 02 (2002) (quoting Strickland, 466 U.S. at 689). The "objective standard of reasonableness" requires "that counsel research relevant facts and law, or make an informed decision that certain avenues will not be fruitful." United States v. Conley, 349 F.3d 837, 841 (5th Cir. 2003) (quotations omitted). However, "[a] conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." United States v. Jones, 287 F.3d 325, 331 (5th Cir. 2002) (quotations omitted). Thus,

"[i]nformed strategic decisions of counsel are given a heavy measure of deference and should not be second guessed." Id. (quotations omitted).

To demonstrate prejudice caused by counsel's allegedly deficient performance, the petitioner must show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

There is no reason for a court to address both the performance and the prejudice components if the defendant makes an insufficient showing on one. See id. at 697. "In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Id. If it is easier to dispose of the claim because of a lack of sufficient prejudice, that course should be followed. Id.

## ANALYSIS

*First Argument*

Morrison first argues that his appellate counsel was ineffective because on appeal, she failed to highlight inconsistencies between Officer Biondolillo's suppression hearing testimony versus his trial testimony. However, the appellate record reflects that Morrison's appellate counsel explicitly raised the alleged inconsistencies. In Morrison's appellate brief for his first appeal, his counsel begins a section of the argument thusly: "At trial, Officer Biondolillo testified about the warrantless entry and search of Mr. Morrison's home for a second time. See ROA1.1312-16. In contrast with his suppression hearing testimony, Officer Biondolillo did not testify that Mr. Morrison appeared in the hallway while he and Trooper Bordelon were still on

the porch."³ His brief in his second appeal also highlighted inconsistencies, asserting "Officer Biondolillo's description of events also changed over time,"⁴ and "[n]otably, Officer Biondolillo's account of the events at the door changed again by the time of Mr. Morrison's trial."⁵

Because Morrison's attorney did in fact raise the alleged discrepancies in Officer Biondolillo's testimony, Morrison cannot demonstrate that her representation was deficient because she failed to do so, or that he suffered any prejudice by her failure to do so. This argument is without merit.

*Second Argument*

Morrison argues that his trial attorneys were ineffective because they did not have transcripts of Officer Biondolillo's suppression hearing testimony available to impeach him at trial. However, he does not use this as a basis to contend that the jury would have acquitted him, but rather to argue that if his counsel had the suppression transcripts in hand, and used them to point out instances at trial where Officer Biondolillo's testimony was inconsistent, the court "would have reversed her decision of not suppressing the illegally obtained evidence used to convict Morrison. . . ."⁶

At the time of trial, the suppression issue had been resolved and was not subject to

---

³ United States v. Morrison, Fifth Cir. No. 18-31213, 2019 WL 4137942, *15 (Aug. 28, 2019) (Brief of Leonard Morrison).

⁴ United States v. Morrison, Fifth Cir. No. 20-30528, 2020 WL 6366830, *11 (Oct. 20, 2020) (Brief of Leonard Morrison).

⁵ Id. at 2020 WL 6366830, *14.

⁶ Deft's Memo in Support of § 2255, Rec. Doc. 722, 17.

recnsideration. Further, to the extent Morrison is suggesting that the suppression issue should have been argued to the jury, "the legality of the search and seizure in question, as well as the admissibility of any evidence obtained therein, are not issues for the jurors to decide." United States v. Jefferson, 2022 WL 1050322, at *2 (E.D. La. Apr. 7, 2022) (citing United States v. Lang, 8 F.3d 268, 271 (5th Cir. 1993); United States v. Stuart, 507 F.3d 391, 395 (6th Cir. 2007)).

Moreover, Officer Biondolillo's testimony was not necessary to Morrison's conviction. Morrison's sole count of conviction was for being a felon in possession of a firearm. Because his suppression motion was denied by this court in the first instance, on remand, and affirmed on appeal, evidence of the firearm located in Morrison's home was admissible, and the jury was instructed on constructive possession. Impeaching the agent at trial would not negate the fact of the presence of the firearm in Morrison's home. Accordingly, Morrison cannot establish that having transcripts on hand to impeach him would have resulted in a different outcome at trial. He thus does not meet the prejudice prong of Strickland.

### Third Argument

Morrison argues that his appellate lawyer was ineffective because on remand she obtained jail phone calls that were "not admissible" and then were "manipulated" by the government. He argues that the phone records in question were not part of the record from the suppression hearing or the trial, but were subpoenaed after the appellate court remanded the matter, and thus were inadmissible in connection with the reconsideration of the motion to suppress on remand. Morrison also argues that counsel for the government manipulated the

7

telephone call evidence by quoting from the transcripts out of context.

Morrison hinges his inadmissibility argument on the fact that his attorney informed him that he could not present new argument or evidence on appeal that had not been introduced prior to the appeal, and the telephone transcripts were subpoenaed after the appeal. However, in this case the new evidence was not submitted to enlarge the record on appeal, but after the matter had been remanded to the district court for a credibility determination. Records are routinely supplemented on remand; often they are remanded for that precise purpose. See, e.g., United States v. Gonzalez-Chavez, 432 F.3d 334, 339 (5th Cir. 2005). Further, the challenged telephone transcripts were subpoenaed by defense counsel, presumably at the behest of Morrison, over the government's objection. Thus, the use of the telephone calls and the arguments based on them were a considered tactic of defense counsel. This strategic decision by defense counsel to include this evidence cannot be second-guessed to provide a basis for constitutionally ineffective assistance of counsel. See Jones, 287 F.3d at 331. Certainly, this tactic did not "permeate the proceedings with obvious unfairness." Id.

As for Morrison's argument that the government manipulated the transcripts by selectively quoting portions, the court observes that both parties emphasized the portions of the transcripts that served their arguments, and defense counsel cannot be deemed ineffective due to the alleged unilateral actions of the government. Finally, the court notes that its conclusion that the remorse expressed by Shlonda Jupiter in the telephone calls reinforced the notion that she consented to allowing the officers to enter was not necessary to the finding crediting the officers' testimony.  Accordingly, this argument is without merit.

*Fourth Argument*

Morrison argues that his trial lawyers failed to subpoena defense witnesses and exonerating evidence on his behalf. He claims that his counsel should have subpoenaed Officer Bordelon and Shlonda Jupiter to impeach the trial testimony of Officer Biondolillo, and should have attempted to obtain Morrison's phone, which was in government custody, because it contained footage from his ADT security camera of Jupiter's encounter with the officers when they first knocked on the door, which would have shown that Jupiter did not invite the officers to enter. According to Morrison, after he requested that his counsel locate the footage in advance of the suppression hearing, she contacted ADT, who confirmed the existence of the door camera but informed her that they did not have the video, which was sent directly to his phone. Morrison further asserts that when he requested his attorney obtain the phone and footage from the government, she refused to do so. Morrison also argues that appellate counsel was ineffective in failing to make a challenge based on Rehaif v. United States, 139 S. Ct. 2191 (2019), because he was unaware he was a felon barred from possessing a firearm.

With respect to counsel's failure to obtain Officer Bordelon's and Jupiter's testimony to impeach Officer Biondolillo's trial testimony, for the same reasons discussed above in connection with Morrison's second argument (that trial counsel was ineffective in failing to have Officer Biondolillo's suppression hearing testimony available to impeach him at trial), counsel's decision not to attempt to rehash suppression issues at trial did not constitute deficient performance.

With respect to Morrison's allegation that his counsel failed to fully investigate and locate

9

the alleged ADT video of the knock-and-talk encounter in advance of the suppression hearing, adequate investigation is required to render effective assistance. Gray v. Lucas, 677 F.2d 1086, 1093 (5th Cir.1982). To establish prejudice resulting from " 'a failure to investigate on the part of his counsel [a movant] must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial.' " Adekeye v. Davis, 938 F.3d 678, 683 (5th Cir. 2019) (quoting United States v. Green, 882 F.2d 999, 1003 (5th Cir. 1989). However, a "[p]etitioner's bald allegation a tape exists somewhere which contains exculpatory evidence does not meet the high burden needed to establish a § 2255 claim." Thomas v. United States, 2011 WL 294276, at *7 (E.D. Tenn. Jan. 27, 2011) (citing Bowers v. Battles, 568 F.2d 1, 5 (6th Cir.1977)). To warrant reversal or justify an evidentiary hearing, a petitioner must present " 'independent indicia of the likely merit of [his] allegations, typically in the form of one or more affidavits from reliable third parties.' " United States v. McDaniels, 907 F.3d 366, 370 (5th Cir. 2018) (quoting United States v. Cervantes, 132 F.3d 1106, 1110 (5th Cir. 1998).

    Morrison's unsupported allegations in the instant motion are insufficient to justify habeas relief or to require an evidentiary hearing. He has not provided any affidavits from his counsel, an ADT representative, or some other reliable third party, which would tend to establish the existence of the video or that the video's contents would aid Morrison's suppression argument. Presented with only conclusory allegations, against the backdrop of Strickland's "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," Strickland, 466 U.S. at 689, the court finds that this ground also lacks merit.

    The same is true for Morrison's Rehaif claim. Under Rehaif, in a prosecution for

possession of a firearm by a restricted person in violation of 18 U.S.C. §§ 922(g) and 924(a), the government must prove both that the defendant knew he possessed the firearm and that he knew he belonged to the relevant category of persons restricted from possessing a firearm (the "status requirement"). 139 S. Ct. 2191 (2019). Morrison contends that his trial and appellate counsel were ineffective for failing to make a Rehaif argument, but his trial was held and concluded on August 10, 2018, before Rehaif was decided on June 21, 2019. His trial counsel cannot be ineffective for failing to argue based on case law that did not exist, nor can his appellate counsel be ineffective for failing to appeal an issue not considered by the lower court.

To the extent Morrison's Rehaif argument could be otherwise raised in this collateral proceeding, see United States v. Kelley, 40 F.4th 250 (5th Cir. 2022), it still would not warrant relief. Morrison's Rehaif argument is that he was unaware that he was a felon, and that he did not know that as a felon he was barred from owning a firearm. The contention that he did not know he was a felon is simply not credible, considering his numerous felony convictions and prison sentences. Further, the status requirement of Rehaif does not require that a felon know that it was a crime to possess a firearm as a result of their prohibited status, but only that he know his status as a felon when he possessed a firearm. United States v. Trevino, 989 F.3d 402, 405 (5th Cir. 2021). Accordingly, Rehaif provides no bases for an ineffective assistance of counsel claim.

### *Fifth Argument*

Morrison argues that his trial and appellate lawyers were ineffective because they permitted the government to make inconsistent arguments and "suborn perjury" through allegedly inconsistent testimony given by agents at the suppression hearing and at trial. This is

essentially a rehashing of his first and second arguments, that trial and appellate counsel should have made more hay out of allegedly inconsistent statements of the officers involved in the search. As discussed at length above, the inconsistencies were, in fact, highlighted and argued by counsel. Thus, Morrison cannot demonstrate any prejudice from counsels' failure to point out these inconsistencies. The court further notes that to the extent Morrison's complaint is that the *government* "suborned perjury", that would not be a basis for finding *defense* counsel ineffective.

**Sixth Argument**

Morrison argues that his trial attorneys failed to bring to the court's attention that he was questioned by Officer Bordelon prior to being Mirandized. Morrison asserts (and the quoted testimony in his brief supports) that after entering, Officer Bordelon questioned him regarding whether he had been using marijuana. Morrison made several several admissions regarding his use of marijuana, and ultimately led Officer Bordelon to an extinguished marijuana cigarette in his bedroom. Only at that point did Officer Bordelon Mirandize him.

"In general, 'the prosecution may not use statements ... stemming from custodial interrogation of the defendant unless' the defendant has first been given Miranda warnings." United States v. Ortiz, 781 F.3d 221, 229 (5th Cir. 2015) (quoting Miranda v. Arizona, 384 U.S. 436, 444 1966)). However, the challenged statements relate only to Morrison's marijuana use, and were not used during trial as evidence of guilt. They bear no relation to the charge of which he was convicted: possession of a firearm by a previously convicted felon. Morrison therefore suffered no prejudice from any statements made prior to being Mirandized. This argument is without merit.

*Seventh Argument*

Morrison asserts that his trial and appellate attorneys were ineffective because they failed to argue that the attempted possession with intent to distribute MDMA charge in his criminal record belonged to another individual, and that this inchoate "attempt" offense cannot be used as an armed career offender predicate.

With respect to Morrison's claim that his counsel failed to argue that his attempted possession to distribute MDMA charge was erroneously imputed to him and belonged to another individual, this argument actually was raised both before the trial court and the appellate court. At sentencing, the court made a specific finding, based upon its review of the state court records, that Morrison was correctly associated with the MDMA charge and conviction. This finding was affirmed on appeal. United States v. Morrison, 854 F. App'x 586, 590 (5th Cir.), cert. denied, 142 S. Ct. 623 (2021).

As to Morrison's contention that his lawyers should have argued that attempted possession with the intent to distribute MDMA cannot serve as an Armed Career Criminal Act ("ACCA") predicate offense, Morrison's argument is legally incorrect. For purposes of the ACCA, a predicate state law offense is one for which state law prescribes a maximum term of imprisonment of ten years or more. 18 U.S.C. 924(e)(2)(a)(ii). At the time of Morrison's attempted possession offense, Louisiana law prescribed a maximum sentence of fifteen years for attempted possession with intent to distribute MDMA. La. R.S. 14:27(D)(3); 40:966(B)(2). The Fifth Circuit has explicitly held that attempted serious drug offenses qualify as predicate offenses for enhancement under the ACCA. United States v. Winbush, 407 F.3d 703, 708 (5th Cir. 2005).

Accordingly, defendant's prior conviction for attempted possession with intent to distribute MDMA was properly determined to be a predicate offense for the ACCA. Morrison's attorneys were not ineffective for failing to raise an argument that is contrary to settled law.

*Eighth Argument*

Morrison argues that his attorney was "conspiring" with the government to get him to enter a guilty plea.

Morrison did not enter a guilty plea, so even assuming the truth of this assertion, he can not demonstrate any prejudice in this regard. This argument lacks merit.

*Ninth Argument*

Morrison argues that his appellate counsel was ineffective because she "refused to argue what [he] instructed her to argue in the manner in which Morrison instructed the facts to be structured." In essence, he is arguing that his appellate counsel should have followed his advice rather than her professional judgment in representing him. His memorandum recites instances in which he challenged his attorney's strategy and disagreed with her explanations for why she chose to pursue certain arguments rather than others, which Morrison, in hindsight, contends would have been more effective. The court first observes that Morrison's appellate counsel was successful in having the matter remanded for an explicit finding related to the suppression issue. Moreover, the fact that Morrison communicated in detail with his attorney, who provided reasons for her decision to proceed in the fashion she did, demonstrates that she made "[a] conscious and informed decision on [appeal] tactics and strategy. . . ." Jones, 287 F.3d 325, 331 (5th Cir. 2002) (quotations omitted). Such strategic decisions are "given a heavy measure of

deference and should not be second guessed." Id. (quotations omitted). It is clear from the record that Morrison's appellate counsel argued the suppression issue extensively on appeal, including emphasizing the alleged discrepancies in the officers' testimony. Her decision to pursue certain arguments rather than others does not constitute constitutional ineffectiveness, but rather a strategic decision based on professional judgment. Her failure to follow Morrison's instructions does not fall below an objective standard of reasonableness, and Morrison has not demonstrated deficient performance. This argument is without merit.

*Tenth Argument*

Morrison argues that his appellate lawyer failed to argue that his prior conviction for attempted possession with intent to distribute MDMA is no longer a predicate offense under the First Step Act and, thus, is no longer a predicate offense under the Armed Career Criminal Act. As discussed in the court's Order and Reasons addressing this issue when raised in Morrison's prior 18 U.S.C. § 3582 motion, while the First Step Act amended the Controlled Substance Act, 21 U.S.C. § 801, et seq. by, inter alia, redefining "serious drug felony," it did not amend the Armed Career Criminal Act definition of a "serious drug offense" under 18 U.S.C. § 924(e). See United States v. Morrison, 2022 WL 4365879, at *3 (E.D. La. Sept. 21, 2022) (citing United States v. Brown, 2022 WL 2135265, at *3 (6th Cir. Mar. 16, 2022) (citing cases) ("[B]ecause Section 401 [of the First Step Act] did not amend the definition of 'serious drug offense' in the Armed Career Criminal Act, 18 U.S.C. § 924(e), Section 401 [of the First Step Act] does not affect a defendant's classification as an armed career criminal following a firearms conviction."). As a result, the definition for "serious drug offense" under the ACCA that is applicable to

defendant remains unchanged, and the First Step Act does not affect Morrison's classification as an armed career criminal. His counsel cannot be ineffective for failing to make a legally incorrect argument that the applicable definition had changed, nor could Morrison be prejudiced by a failure to do so.

***Eleventh Argument***

Morrison filed a supplement to his original section 2255 motion, stating that it was based on "new established case law."[7] Specifically, he argues that recent appellate decisions in other circuits dictate a finding that his conviction under Louisiana state law for possession with intent to distribute cocaine cannot serve as a predicate for enhancement because the Louisiana definition for cocaine is broader than its federal counterpart. As an example, he cites United States v. Oliver, 987 F.3d 794 (8th Cir. 2021), in which the United States Court of Appeals for the Eighth Circuit held that one of the defendant's predicate convictions could not qualify as a serious drug felony because the Illinois law under which he was convicted applied to a broader range of substances than the federal Controlled Substances Act. The Illinois law defined cocaine to include optical, positional, and geometric isomers but "federal law defines cocaine to include only 'optical and geometric isomers.'" Oliver, 987 F.3d at 807 (quoting 21 U.S.C.A. § 812). The Eighth Circuit concluded that when determining "whether the elements of the crime of conviction sufficiently match the conduct of a serious drug felony . . . . [i]f the state offense sweeps more broadly, or punishes more conduct than the federal definition, the conviction does not qualify as a predicate offense." Id. at 806 (citing United States v. Vanoy, 957 F.3d 865, 867

---

[7] Morrison's Petition for Leave to Supplement, Rec. Doc. 734, 1.

(8th Cir. 2020); Shular v. United States, 140 S. Ct. 779, 782 (2020) (internal alterations and quotations omitted)).

Morrison argues that the same rationale applies in his case, because Louisiana state law defines cocaine to include all isomers, and thus that it is broader than the federal definition that is limited to optical and geometric isomers. He therefore contends that his Louisiana state cocaine conviction cannot serve as an enhancement predicate. Essentially, he asks the court to apply precedent from other circuits retroactively to find that his Louisiana cocaine conviction is not a valid predicate for his ACCA enhancement.

The precedents relied upon by Morrison are not binding on this court. Nor do they establish a new constitutional right made retroactively applicable to cases on collateral review. "Only the Supreme Court can render a new rule retroactively applicable to cases on collateral review." In re Kemper, 735 F.3d 211, 212 (5th Cir. 2013) (citing Tyler v. Cain, 533 U.S. 656, 662–63 (2001)). Therefore, the cases cited by Morrison provide no basis for habeas relief.

In addition, in the Fifth Circuit, to "show that the [state] statute is broader than its federal counterpart, [defendant] must also show 'a realistic probability' that [Louisiana] will prosecute the 'conduct that falls outside the generic definition of a crime.' " Alexis v. Barr, 960 F.3d 722, 726 (5th Cir. 2020) (citing Vetcher v. Barr, 953 F.3d 361, 367 (5th Cir. 2020) (quoting Moncrieffe v. Holder, 569 U.S. 184, 191 (2013)). "To do so, [defendant] must 'point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner.' " Alexis, 960 F. 3d at 727 (quoting Vazquez, 885 F.3d at 873 (citing Gonzales v. Duenas-Alvarez, 549 U.S. 183, 193 (2007)). Thus, to prevail on his argument in the

Fifth Circuit, Morrison would have to show that he (or someone else) was prosecuted under Louisiana law for a form of cocaine that was *not* an optical or geometric isomer. This he has not attempted to do.[8] Accordingly, the alleged overbreadth of the Louisiana cocaine definition does not provide Morrison a basis for the requested relief.

Finally, the court notes that while Morrison premised this argument on what he described as "new established case law" decided after his 2018 sentencing, he also contends that his attorney failed to object on those grounds at his sentencing.[9] To the extent that through this argument Morrison intends to raise an ineffective assistance claim, the court notes that Morrison's counsel cannot have been deficient in failing to object at sentencing based on case law that did not exist at sentencing. In addition, as set forth above, any such argument would have been lacking in merit, and there can be no deficiency in failing to raise a meritless objection.

For all of the foregoing reasons,

**IT IS HEREBY ORDERED** that defendant's **Motion Under 28 U.S.C. § 2255 to**

---

[8] In one case, the Eighth Circuit acknowledged the argument that "a prosecution for anything other than an optical or geometric isomer is only a 'theoretical possibility' based on the government's contention that other isomers [besides optical and geometric] exist only in the lab at this point." United States v. Owen, 51 F.4th 292, 296 (8th Cir. 2022), reh'g denied, 2022 WL 17840559 (8th Cir. Dec. 22, 2022).

[9] The government treated Morrison's eleventh argument as an ineffective assistance of counsel argument and Morrison responded accordingly in his reply.

**Vacate, Set Aside, or Correct Sentence** (Rec. Docs. 722, 734) is **DENIED**.

New Orleans, Louisiana, this  7th  day of February, 2023.

                                  **MARY ANN VIAL LEMMON**
                                  **UNITED STATES DISTRICT JUDGE**